UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>    v.<br><br>EDWARD SMITH,<br><br>                   Defendant. | Case No. 3:15-cr-00061-HDM-WGC<br>          3:21-cv-00248-HDM<br><br><br>ORDER |

Before the court is a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 filed by defendant Edward Smith (ECF No. 935). The government has responded (ECF No. 942), and Smith has replied (ECF No. 945).

**I. Factual and Procedural Background**

On August 5, 2015, Smith and nine other co-defendants were charged by way of indictment with a large drug distribution conspiracy and other related crimes. (ECF No. 1). Smith's charges stemmed from his orchestration, while incarcerated at Northern Nevada Correction Center, of several drug transactions outside the institution between co-defendant Andres Rodriguez and Roberto Contreras Lopez, a confidential informant for the Drug Enforcement Administration. Smith's charges included one count of conspiracy to possess with intent to distribute, three counts of methamphetamine distribution, one count of money laundering and one count of illegal use of a communication facility. (*Id.*) The indictment was superseded for a second time

1

on March 9, 2016. On February 28, 2018, a third superseding indictment was returned against Smith only, adding one more count of methamphetamine distribution.

All of Smith's co-defendants pleaded guilty while Smith proceeded to trial. At trial, the government presented evidence that Smith directed co-defendant Andres Rodriguez to sell various amounts of methamphetamine on three occasions to a man named Javier, whose contact information Smith had secured from another inmate. Javier was, unknown to either Smith or Rodriguez, a confidential informant cooperating with the Drug Enforcement Agency. Smith also asked Rodriguez to give $1,000.00 to a correctional officer who agreed to smuggle drugs into Smith's prison. Smith arranged for a wire transfer of $1,500.00 to pay for the drugs and to cover the correctional officer's payment. Marisella Rivera, the girlfriend of another prison inmate, Jorge Murillo, conducted the wire transfer, and Rodriguez collected the funds per Smith's instruction. The evidence included several phone calls from Smith to Rodriguez and one from Smith to Lopez Contreras, as well as conversations between Rodriguez and Lopez Contreras and the testimony of Rodriguez, Lopez Contreras, and DEA Agent Blaine Beard. Smith did not testify.

After the government's evidence, Smith's attorney moved for Rule 29 dismissal. Counsel argued, in part, that the government had not met its burden to prove that the phone calls were made by Smith. (ECF No. 832 (Tr. 324)). The motion, which was made and argued outside the presence of the jury, was denied. (*Id.* at

325). Smith at that point opted not to testify, a decision about which he was canvassed. (*Id.* at 326-27).

During closing argument, defense counsel stated:

> I will, from the outset, concede . . . that the government has proven that Andres Rodriguez was involved in a massive drug operation, and that Andres Rodriguez was involved with somebody inside the prison as part of his operation. What the government has not established is that it was Mr. Smith involved.

(*Id.* at 409). He argued that Lopez Contreras had never met Smith so could not identify him as the speaker on the phone calls and that Rodriguez, who was the only person who had identified Smith, was not trustworthy and had significant incentive to falsely pin the blame on Smith. Counsel also argued:

> You may have 50 reasons that you think, ah, Mr. Smith probably did it. I think he probably did it. Fifty of them. But, if you have one reasonable doubt that the government has not established that it was Mr. Smith making those phone calls, then it is your duty to find him not guilty under the requirements of this Court and the law.

(*Id.* at 426).

Following deliberations, the jury found Smith guilty on all counts. He was later sentenced to 235 months in prison. Following a direct appeal, in which Smith raised, among other things, a sufficiency of the evidence claim as to his money laundering conviction, Smith filed the instant § 2255 motion.

**II. Standard**

Pursuant to 28 U.S.C. § 2255, a federal inmate may move to vacate, set aside, or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum

1 authorized by law; or (4) the sentence is otherwise subject to
2 collateral attack. *Id.* § 2255(a).

3       Smith primarily asserts claims of ineffective assistance of
4 counsel. Ineffective assistance of counsel claims are governed
5 by *Strickland v. Washington*, 466 U.S. 668 (1984). Under
6 *Strickland*, a petitioner must satisfy two prongs to obtain
7 habeas relief—deficient performance by counsel and prejudice.
8 466 U.S. at 687. With respect to the performance prong, a
9 petitioner must carry the burden of demonstrating that his
10 counsel's performance was so deficient that it fell below an
11 "objective standard of reasonableness." *Id.* at 688. "'Judicial
12 scrutiny of counsel's performance must be highly deferential,'
13 and 'a court must indulge a strong presumption that counsel's
14 conduct falls within the wide range of reasonable professional
15 assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009)
16 (citation omitted). In assessing prejudice, the court "must ask
17 if the defendant has met the burden of showing that the decision
18 reached would reasonably likely have been different absent
19 [counsel's] errors." *Strickland*, 466 U.S. at 696.
20 **III. Analysis**

21       A. Grounds One and Four

22       In his first and fourth grounds for relief, Smith asserts
23 that counsel was ineffective for failing to challenge the phone
24 calls that were introduced at trial. (Tr. Exs. 1-8 & 21).
25 Specifically, Smith argues that the "talk time" for each of
26 these calls listed in the Nevada Department of Corrections'
27 official call log does not match the call duration for the calls
28 identified in the government exhibits. He therefore appears to

4

suggest that the phone calls have been tampered with or are not otherwise authentic. Ground One asserts that Smith's attorneys were ineffective for failing to investigate and notice the discrepancies, and Ground Four asserts that Smith's attorneys were ineffective for failing to object to introduction of the calls due to the discrepancies. The claims are closely aligned and therefore properly considered together.

Smith can demonstrate neither deficient performance nor prejudice. It is evident, when comparing the recordings of the phone calls to the NDOC call log, that the "talk time" included only the time after the preliminary instructions concluded and the inmate was directed to begin speaking. The government's listed times, by contrast, reflected the entire length of the recording, including the preliminary instructions. The court has compared each recording to the times listed in the call log and the government's exhibits and each corresponds exactly in this manner. There being no discrepancy, counsel were neither deficient nor caused Smith prejudice by failing to raise the issue. Smith is thus not entitled to relief on either Ground One or Ground Four.

B. Grounds Two and Thirteen

In Ground Two, Smith alleges that his attorneys were ineffective for not investigating (1) Randy Ponciano; and (2) Robert Lopez Contreras. As to Lopez Contreras, Smith asserts, counsel should have discovered various discrepancies and raised them as a basis for excluding his testimony. In Ground Thirteen, Smith asserts that the government committed prosecutorial misconduct by allowing Lopez Contreras, an alleged impostor, to

testify. The court will consider Grounds Two and Thirteen together as they significantly overlap.

### i. Ponciano

Ponciano was a "source of information" in the investigation into Smith's criminal conduct. Smith asserts that he asked his attorneys to obtain copies of Ponciano's phone calls from prison, Ponciano's arrest and prison records, and Ponciano's statement to the DEA. But Smith does not explain what any of this information would have shown or how it would have led to a reasonable likelihood of a different result in his case. He has not therefore demonstrated either prejudice or deficient performance in this respect.

### ii. Lopez Contreras

Smith asserts that the man who testified on the stand as Lopez Contreras was not actually Lopez Contreras, pointing to several indications of his alleged falsity: (1) the dates of Lopez Contreras' confidential source contract produced during discovery is for a time period following his involvement in this case; (2) Lopez Contreras testified that he had received about $33,000 in compensation over his 16 years of cooperating but if he had cooperated as frequently as he testified and received even a fraction of what he did in this case, he would have earned in excess of $90,000; (3) Lopez Contreras could not have worked at Damonte Ranch since 2003 as he testified because Damonte Ranch was a community development, not a ranch, and it did not exist in 2003, and at any rate Lopez Contreras would never have been hired with his criminal history; (4) Lopez Contreras testified that his phone calls with Smith were in

6

Spanish when Smith does not speak Spanish; (5) the witness who testified did not resemble a photo of Lopez Contreras shown at trial; (6) Beard testified that Lopez Contreras had been arrested on a meth charged in 2010 but no such charge appears on his rap sheet; (7) his rap sheet shows Lopez Contreras had been arrested and removed from the country several times, including in Bakersfield, California in 2006, which contradicts his claim he'd worked at Damonte Ranch since 2003; and (8) the government represented that there was no evidence of Lopez Contreras' dishonesty or history of substance abuse problems when actually Lopez Contreras had been arrested for meth in 2010 and there was evidence of substance abuse in his rap sheet. (ECF No. 935 at 10-11; 52-55).

None of Smith's arguments or purported facts, alone or in combination, establishes that the witness who testified was not in fact Lopez Contreras. Preliminarily, Smith does not provide any of the discovery on which he bases his arguments, making it impossible for the court to properly evaluate several components of his claim. At any rate, even if Smith has accurately represented the contents of the discovery, none of the evidence or testimony he cites seriously calls into question the identity of the witness who testified such that counsel was ineffective, or the government committed misconduct, with respect to that witness. Lopez Contreras cooperated with the DEA for many years, including before and after the time of the events in this case, so the presence in discovery of a cooperation contract for a time after Smith's criminal acts proves little. Smith's speculation as to how much money Lopez Contreras should have

7

received over the course of 16 years is not evidence. What is also pure speculation is Smith's assertion that Lopez Contreras could not have found work with his rap sheet. Nor has Smith established that Damonte Ranch was solely a planned residential community and not a ranch on which Lopez Contreras could have worked.[1] The court did not understand Lopez Contreras' testimony to be that the phone call with Smith was in Spanish, and regardless, the jury could hear for itself that it was not in Spanish. (*See* ECF No. 830 (Tr. 50-51)). Changes in physical appearance can and do take place over time, and the appearance of one's skin can also vary depending on sun exposure and photographic lighting. Lopez Contreras' arrest in California and removal from the country in 2006 is not inconsistent with his working at Damonte Ranch since 2003, particularly as he testified that in at least one year he worked at the ranch for less than the full year, (*see id.* at 71), and the dates of Lopez Contreras' removals quoted by Smith in his motion reflect repeated reentries into the country, sometimes within weeks of each other. Finally, even assuming the rap sheet erroneously omitted a 2010 charge or arrest and even assuming the government incorrectly represented that there was no evidence of dishonesty or substance abuse, the court is not persuaded that either factor leads to an inexorable -- or even probable -- conclusion that the trial witness was not who he said he was, and Smith has not otherwise established how such information, or lack thereof,

---

[1] Internet research suggests that in fact Damonte Ranch was, in the relevant time period, both a residential community *and* a working ranch. *See* https://en.wikipedia.org/wiki/Damonte_Ranch (last accessed May 18, 2022).

caused him prejudice sufficient to support either an ineffective assistance of counsel claim or a claim of prosecutorial misconduct.

As such, even if counsel were deficient for failing to raise these various issues with the court, there is no reasonable likelihood that the court would have excluded Lopez Contreras' testimony even if they had. Smith has not therefore established ineffective assistance of counsel and is not entitled to relief on Ground Two of the motion.

For the same reasons, Smith has not established that the prosecutor committed misconduct. "Due process protects defendants against the knowing use of any false evidence by the State, whether it be by document, testimony, or any other form of admissible evidence." *Hayes v. Brown*, 399 F.3d 972, 981 (9th Cir. 2005). Smith has not established that Lopez Contreras' testimony was false. Accordingly, Ground Thirteen is likewise without merit.

**C. Grounds Three and Six**

Smith asserts that the $1,500.00 wire transfer did not relate to drug dealing but actually was for pornography and stamps, the former of which is contraband in the prison. Smith asserts that Jorge Murillo was willing to testify as much and that proper investigation from his counsel would have revealed that pornography from Rodriguez's phone matched most of the phone calls between Smith and Rodriguez. In Grounds Three and Six, Smith asserts his attorneys were ineffective for failing to investigate these assertions or present evidence supporting it to the jury, including the testimony of Murillo. He asserts that

1  if these facts had been presented, he would not have been
2  convicted.

3      The government argues that Smith has provided no affidavit
4  or admissible evidence of what Murillo would have testified to,
5  but that even if he had, such evidence would have to be weighed
6  in the context of the other very strong evidence at trial,
7  including Smith's thinly disguised phone calls with Rodriguez.
8  Smith replies that his claim is supported by his own letters to
9  his attorneys and his statements to the court before trial.

10     Smith's statements to the court before trial were not
11 specific to Murillo; he stated only that counsel had not
12 subpoenaed any of thirteen witnesses he asked for. (ECF No. 830
13 (Tr. 17-18)). Further, Smith's own letters, even if they had
14 been produced, would be self-serving and unreliable evidence.
15 Most importantly, Smith provides nothing from Murillo indicating
16 that he had been willing to testify or what he would have
17 testified to. Absent such evidence, Smith cannot establish
18 either that counsel was deficient or that his conduct prejudiced
19 Smith.

20     But finally, and most importantly, it is not reasonably
21 likely that a jury would have acquitted Smith on any count had
22 counsel investigated and/or Murillo testified as Smith claims he
23 would have. Whether prejudice resulted from "a duty to
24 investigate must be considered in light of the strength of the
25 government's case." *See Rios v. Rocha*, 299 F.3d 796, 809 (9th
26 Cir. 2002) (citation omitted)). The government's case was
27 strong, and that Rodriguez, and thus Smith, were dealing drugs
28 was supported not only by Rodriguez's own testimony and the

barely concealed conversations between Rodriguez and Smith, but also by recordings between the confidential informant and Rodriguez, which clearly involved drug dealing. Smith's claim that the $1,500.00 transfer was for pornography and stamps was in this context implausible and not likely to be believed by a reasonable jury.

Accordingly, Smith has not shown he is entitled to relief on Ground Three or Ground Six of the petition.

**D. Ground Five**

In his fifth ground for relief, Smith alleges that counsel rendered ineffective assistance by failing to renew his Rule 29 motion at the close of the defense, by not articulating the original motion count by count, and by not asking the court to explain its ruling. Smith argues that had his attorney rendered effective assistance, the court would have seen there was no evidence of money laundering. Finally, he argues that the Ninth Circuit denied review because the motion was not renewed.

The government argues that this claim is not reviewable on a § 2255 motion because it was raised on direct appeal. It further argues that to the extent the claim is reviewable, Smith cannot show prejudice.

As a preliminary matter, Smith raised on direct appeal the underlying claim on which his ineffective assistance of counsel claim is based, not the ineffective assistance of counsel claim itself. It is not therefore procedurally barred.

The court agrees, however, that Smith cannot demonstrate prejudice. The Ninth Circuit considered, and rejected, Smith's sufficiency-of-the-evidence claim as to his money laundering

conviction.[2] While the court applied the plain error standard to the unpreserved claim, (ECF No. 924 at 2-3), Smith has not established a reasonable likelihood that the Ninth Circuit would have ruled otherwise had it applied *de novo* review. *See United States v. Magallon-Jimenez*, 219 F.3d 1109, 1112 (9th Cir. 2000) (noting that the appellate court reviews denial of a Rule 29 motion based on insufficient evidence *de novo*).

Sufficiency of the evidence is a low standard to begin with, making it difficult to conceive a different result even under *de novo* review. *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1010 (9th Cir. 1995) ("[I]t is difficult to imagine just what consequences flow from our application of the two different standards or to envision a case in which the result would be different because of the application of one rather than the other of the standards."); *Mahon v. United States*, 2018 WL 8188212, at *59 (D. Ariz. Nov. 5, 2018), *report and recommendation adopted*, 2019 WL 1556147 (D. Ariz. Apr. 10, 2019) ("In substance, however, the courts have struggled to define a practical effect to the higher 'plain error' standard, in light of the already exacting standard for claims of insufficient evidence."). This is particularly so in view of the virtually incontrovertible evidence of Smith's guilt introduced at trial. That evidence included several recorded phone calls during which Smith gave Rodriguez a series of numbers that would allow him to collect "15" from MoneyGram or Western Union, sent from Los Angeles by Marisella Rivera, (Tr. Exs. 6A-8B), and several

---

[2] Smith raised no other sufficiency of the evidence claim on appeal and Smith's Rule 29 claim applied only to the money laundering claim.

conversations in which Smith directed Rodriguez to sell Lopez Contreras drugs. As previously discussed, Smith's contention that the wire transfer was for pornography and postage stamps is implausible when considering all the evidence introduced at trial.

For the same reason, counsel's failure to preserve the motion, to address the motion count-by-count, or to require the court to explain its ruling was not deficient performance and did not cause Smith prejudice.

Smith is not entitled to relief on Ground Five of the motion.

**E. Ground Seven**

In Ground Seven, Smith asserts his attorney was ineffective for failing to call witnesses in his favor who would have testified that the only thing Smith sold in his institution was porn, stamps and other store items.

Smith asserts that counsel should have called Jorge Murillo. For the reasons explained *supra*, Smith has failed to substantiate what Murillo's testimony would have been and therefore has not established a reasonable probability of a different outcome had Murillo been called.

Smith also references thirteen witnesses he asked to be called but who were not. There is no evidence as to what any witness would have testified, nor is it even clear which thirteen witnesses Smith alleges should have been called. Smith therefore has failed to substantiate his claim with respect to any of the other witnesses he asserts should have been called.

1   Smith has failed to establish that he is entitled to relief

2   on Ground Seven of the motion.

3   **F. Ground Eight**

4   In Ground Eight, Smith asserts that counsel was ineffective

5   because he denied Smith his right to testify on his own behalf.

6   While Smith waived his right to testify after a canvass by

7   the court, he argues that he was forced into that decision

8   because counsel chose to dispute that it was Smith on the phone

9   calls when in fact Smith wanted to admit that he made the calls.

10  Counsel also failed to provide Smith with a list of questions he

11  would ask if Smith testified, further deterring Smith from

12  exercising his constitutional right to testify.[3]

13  Counsel disputed that it was Smith on the calls twice: once

14  during the Rule 29 motion at the close of the government's case

15  and once during closing arguments. The first time was outside

16  the presence of the jury and the second time was after Smith had

17  already waived his right to testify. In neither case could

18  counsel's strategic decision reasonably have affected Smith's

19  decision to testify. Smith therefore has not established

20  prejudice.

21  The assertion that Smith could not testify because counsel

22  failed to provide him with questions in advance is conclusory

23  and also fails to establish any prejudice.

24

25

---

26  [3] In reply, for the first time, Smith argues that counsel's
    questions to witnesses – specifically, asking them whether they

27  knew Smith made the phone calls – also precluded him from
    testifying. The court will not consider this argument raised for

28  the first time in the reply.

Finally, counsel made the strategic decision to defend Smith by casting doubt on whether it was Smith on the phone calls. This was a reasonable strategic decision in view of the fact the phone calls quite clearly involved drug dealing and the implausibility of Smith's contention that he was, instead, orchestrating the sale of pornography. Smith still could have testified, if he had so desired, even after counsel made these strategic arguments. Counsel's decision did not deprive Smith of his right to testify.

In short, Smith has not established either deficient performance or prejudice and therefore has not shown he is entitled to relief on Ground Eight.

### G. Ground Nine

Ground Nine asserts that counsel was ineffective for failing to object to Smith being held accountable as a principal because, Smith asserts, the indictment alleged only aiding and abetting. Smith argues that no aiding and abetting jury instruction was given as to Counts 2 and 3, suggesting that he thus should not have been convicted under either count.[4]

Counsel was not ineffective for failing to raise what would have been a meritless argument. *United States v. Moore*, 921 F.2d 207, 210 (9th Cir. 1990). Principal liability and aiding and abetting liability are alternative theories of liability, and the third superseding indictment alleged both theories. (*See* ECF

---

[4] The government's response to Ground Nine misconstrues Smith's argument, focusing as it does on whether *aiding and abetting* need to be alleged in an indictment. Smith's reply responds to this argument. Because that is not how the court reads Smith's claim, the court will not delve into the arguments raised in the opposition and reply as to Ground Nine.

No. 660). Document #661 is not the indictment. It therefore would have been frivolous for counsel to argue that principal liability had not been alleged. For that reason, Smith has demonstrated neither deficient performance nor prejudice, and he is not entitled to relief on Ground Nine of the motion.

### H. Ground Ten

In Ground Ten, Smith asserts his attorney was ineffective for failing to move for dismissal on the grounds of lack of jurisdiction. Although the claim is difficult to understand, Smith appears to allege that the third superseding indictment does not charge any federal crimes.[5]

This claim is plainly meritless. Each count in the indictment charges a violation of federal law. The court therefore had jurisdiction, and a motion to dismiss for lack of jurisdiction would have been denied. Smith's counsel was neither deficient nor caused Smith prejudice by failing to make such a motion. Smith is not entitled to relief on Ground Ten.

### I. Ground Eleven

In Ground Eleven, Smith asserts a claim of judicial bias based on statements he alleges the court made when he sought appointment of new counsel in July 2016 and April 2018.

Smith asserts that when he asked for new counsel in July 2016, the court responded: "I know how you people play the system" and that Smith also said, "I have never fired anyone, let alone a [sic] attorney, in my life." The transcript of the

---

[5] Smith's reply delves into several additional arguments that are not part of his original claim and do not clearly connect to the original claim. The court will not consider these contentions raised for the first time in the reply.

1   July 2016 hearing does not include either statement, and instead

2   reflects the following exchange:

3       And at this point Ms. Field-Lang has reviewed all of
        the material in this case at substantial cost. You
4       have court-appointed counsel, and that's
        constitutionally provided for, and the Court respects
5       that. On the other hand, the Court doesn't like to
        waste money and have somebody, you know, fully develop
6       and be prepared to go to trial on a case, and then at
        the last second ask to be removed on the basis that
7       the defendant simply isn't happy with counsel's
        performance or whatever the other reason may be. And,
8       frankly, there's some fairly substantial Ninth Circuit
        law that does not permit withdrawal of counsel at this
9       late date, and certainly this is a very late date.

10      . . . .

11      My major concern is that, number one, everybody had
        scheduled the trial for next week. Number two, your
12      counsel, as I've indicated already, has devoted
        considerable time to this case, and from an economic
13      standpoint, it simply means that another attorney is
        going to have to work it up. I can almost tell you
14      without any reservation whatsoever that if I do go
        ahead and appoint new counsel for you, that will be
15      the last time I do it except for extraordinary
        circumstances. At that point I'll pretty much
16      determine probably that you're playing the system, and
        I've been around on the bench long enough to see it
17      happen many times. So after the first change of
        attorneys I get much more concerned about who's really
18      creating the problem, and you may just end up
        representing yourself in the case if we keep going
19      down that path, and maybe that's what you want to do
        right now, I don't know, I'll find out in a few
20      minutes.

21  (ECF No. 844 (Tr. 3-5)).

22      Recognizing that neither of the statements Smith alleges

23  were made appear anywhere in the official transcript, Smith

24  contends the transcript was altered. Smith's assertion is

25  without merit. The audio recording of the July 16, 2016, hearing

26  is consistent with the official transcript, and thus there is no

27  basis to the claim the transcript was altered.

28

17

Smith also alleges that during an April 11, 2018, hearing on yet another motion to withdraw as counsel, the court expressed that the case was costing a lot of money. As before, Smith recognizes that this statement does not appear in the official transcript but asserts the transcript must have been altered. (*See* ECF No. 845). Again, the audio recording of the April 11, 2018, hearing is consistent with the official transcript, and Smith's factual allegation therefore lacks merit.

Considering the statements that were actually made, which appear on the official record, the court does not find evidence of judicial bias that required disqualification or that violated Smith's constitutional rights.

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the . . . proceedings[] do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky v. United States*, 510 U.S. 540, 555-56 (1994). None of the court's statements reflect a high degree of antagonism that would make a fair ruling impossible. As the court previously

held when the defendant moved for recusal just before opening
statements:

> [T]he Court has been quite fair in terms of your
> requests for other counsel or your request of counsel
> to be discharged from representation of you. Cost has
> never been a factor, in my mind, in terms of whether
> or not you should or should not have representation,
> whether or not you should be appointed additional
> counsel, or anything of that nature. The Court is well
> aware of the circumstances that you have in connection
> with appropriate representation. And the comments that
> I made -- and I would have go back and look at the
> transcript -- are related to comments that I would
> make from time to time in other cases where there have
> been a number of attorneys involved in the case. At
> some point in time, the Court is concerned, not about
> the economic part of it, but concerned about whether
> or not the defendant is able, in any of those cases --
> and perhaps to some degree in your case -- is able to
> be able to get along with counsel well enough for
> counsel, in the future, if there is a new attorney
> appointed, to be able to fairly represent the
> defendant. And at some point, a defendant may have to
> represent himself if he's going to keep going through
> attorneys. So to the degree that's a motion to
> disqualify the Court, it's denied.

(ECF No. 830 (Tr. 18-19)). While the court did at one point

express concern about the economic costs of replacing counsel,

it was not of the costs associated with a single change of

counsel but of Smith's repeated replacements of counsel just

before trial, which suggested that perhaps Smith would not be

able to work with any attorney. Such concerns are not evidence

of judicial bias but instead were the court's caution to Smith

that he would not be entitled to indefinite replacements of

counsel. Smith's assertion that he was treated differently than

other defendants is conclusory and without a factual basis, and

he has not identified any similarly situated defendants who were

treated any differently than he was.

As it did before trial began, the court finds no evidence of judicial bias that violated Smith's constitutional rights. Accordingly, Smith has not established he is entitled to relief on Ground Eleven.

J. Ground Twelve

In Ground Twelve, Smith asserts a claim based on alleged newly discovered evidence suggesting that Rodriguez received more benefits from the government than he admitted at trial. The government argues that Smith's claim is not cognizable on habeas absent a constitutional violation, and to the extent the court were to consider it a motion for a new trial, the motion must be denied.[6]

Citing several affidavits purportedly from Rodriguez's fellow inmates, Smith contends that Rodriguez and Beard had an overly friendly relationship with frequent interactions leading up to the trial, and that Rodriguez received benefits that he did not disclose to the jury, including: (1) Beard's phone number and a promise that Beard would help Rodriguez's girlfriend; (2) Beard and the government's help with Rodriguez's detention; and (3) Beard's testimony on Rodriguez's behalf at sentencing. Several of the inmate affidavits also state that Rodriguez and Beard were seen visiting nearly daily, sometimes for hours, and that Rodriguez received preferential treatment in the jail. Finally, inmate Michael Jackson states that June 2017, Rodriguez asked him if it was snitching to tell the authorities

---

[6] Again here, Smith's reply delves into several additional arguments that are not part of his original claim and do not clearly connect to the original claim. The court will not consider these contentions raised for the first time in the reply.

something that was not true if it would get him a better deal. (ECF No. 935 at 46-48).

A claim alleging newly discovered evidence does not, standing on its own, assert a constitutional violation amenable to § 2255 relief. *See United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010).

To the extent Smith is alleging actual innocence, the Supreme Court has not yet recognized a freestanding claim of actual innocence for which habeas relief may be granted. *See, e.g., McQuiggin v. Perkins*, 569 U.S. 383 (2013). But "[a]ssuming cognizability, the requisite showing on such a claim is 'extraordinarily high' and must be 'truly persuasive.'" *White v. Russell*, 856 Fed. App'x 130, 131 (9th Cir. 2021) (unpublished opinion) (citing *Herrera v. Collins*, 506 U.S. 390 (1993)), *cert. denied sub nom. White v. Garrett*, 142 S. Ct. 1170 (2022). "At a minimum, 'to be entitled to relief, a habeas petitioner asserting a freestanding actual innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent.'" *Id.*

The evidence offered by Smith falls far short of this demanding standard, particularly in light of the compelling evidence of his guilt introduced at trial. The evidence goes only to Rodriguez's credibility, which was challenged by defense counsel at trial. This new evidence does not significantly undermine Rodriguez's credibility sufficient to persuade the court that Smith is probably innocent. Therefore, to the extent Smith asserts a claim of actual innocence, the claim is without merit.

For the same reason, if Smith is seeking a new trial, that motion would also be denied. A defendant seeking a new trial must show, among other things, that "the evidence is not (a) cumulative or (b) merely impeaching" and that "the evidence indicates the defendant would probably be acquitted in a new trial." *United States v. Wilkes*, 744 F.3d 1101, 1110 (9th Cir. 2014) (citing *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005)). Not only does the evidence on which Smith relies bear primarily on Rodriguez's credibility, much of the evidence was in fact presented at trial. Defense counsel highlighted the fact that Rodriguez did not mention Smith in his first proffers, along with the evidence that Beard and Rodriguez had a friendly relationship and frequently met. (ECF No. 830 (Tr. 39-40); ECF No. 831 (Tr. 157-61, 230-32). And as just discussed, Smith has not established that he would probably be acquitted in a new trial if this evidence were presented. Accordingly, Smith has not met the requirements for a new trial, and any such motion is denied.

Smith has not established he is entitled to relief on Ground Twelve.

**IV. Motion for Evidentiary Hearing**

The court is not required to conduct a hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Because the motion and files and records of this case conclusively show that Smith is not entitled to relief, his request for an evidentiary hearing is denied.

## V. Certificate of Appealability

In order to proceed with an appeal, Smith must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a defendant must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Allen*, 435 F.3d at 951; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen*, 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, Smith has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

The court has considered the issues raised by Smith, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. Accordingly, Smith will be denied a certificate of appealability.

/

/

/

/

/

/

## VI. Conclusion

In accordance with the foregoing, IT IS THEREFORE ORDERED that Smith's motion to vacate, correct or set aside (ECF No. 935) is DENIED.

IT IS FURTHER ORDERED that Smith is DENIED a certificate of appealability.

The Clerk of Court shall enter final judgment and close this case.

IT IS SO ORDERED.

DATED: This 6th day of June, 2022.

_Howard D McKibben_

UNITED STATES DISTRICT JUDGE

24